# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

STACE JAYMAL BARTO,

        Plaintiff,

vs.

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No.  21-CV-4016-LRR-MAR

**ORDER**

_____

**I.**     **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*2*

**II.**    **RELEVANT PROCEDURAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . *2*

**III.**   **STANDARD OF REVIEW.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

    **A.**    *Review of Final Decision.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    **B.**    *Review of Report and Recommendation.* . . . . . . . . . . . . . . . . . . *4*

**IV.**   **OBJECTIONS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

   *Objection 1: Judge Roberts Erred in Finding the ALJ Properly Weighed Dr. Perepu's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

   *Objection 2:  Judge Roberts Erred in Finding the ALJ Gave Good Reasons to Support His Assessment of Barto's Credibility* . . . . . . . . . . . . . . . . . . . *9*

   *Objection 3:  Judge Roberts Erred in Finding that the ALJ Properly Relied on Vocational Expert Testimony.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

**V.**    **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*

# I.  INTRODUCTION

The matter before the court is Plaintiff Stace Jaymal Barto's ("Barto") Objections (docket no. 22) to United States Magistrate Judge Mark A. Roberts's Report and Recommendation (docket no. 21), which recommends that the court affirm the Commissioner's final decision to deny supplemental security income benefits to Barto.

# II.  RELEVANT PROCEDURAL BACKGROUND

On April 5, 2021, Barto filed a Complaint (docket no. 4), seeking judicial review of the Commissioner's final decision denying Barto's application for Title XVI supplemental security income benefits.[1] On August 12, 2021, the Commissioner filed an Answer (docket no. 10).  On October 28, 2021, the parties submitted a Joint Statement of Facts    (docket no. 14).  On November 10, 2021, Barto filed the Plaintiff's Brief (docket no. 15).  On December 17, 2021, the Commissioner filed the Defendant's Brief (docket no. 18).  On December 28, 2021, Barto filed the Reply Brief (docket no. 19). On December 28, 2021, 2021, the matter was referred to Judge Roberts for issuance of a Report and Recommendation.  On June 22, 2022, Judge Roberts issued the Report and Recommendation (docket no. 21).  On July 6, 2022, Barto filed the "Objections" (docket no. 22).  The Commissioner filed no response to "[Barto's] Objections to the Report and Recommendation[]."

# III.  STANDARD OF REVIEW

## A.  Review of Final Decision

The Commissioner's final determination not to award disability insurance benefits is subject to judicial review.  42 U.S.C. § 1383(c)(3).  The court has the power to "enter

---

[1] Initially, Barto filed both a Title XVI claim for supplemental security income benefits and a Title II claim for childhood disability benefits (formerly disabled adult child benefits), but the Title II claim was dismissed when Barto amended his alleged onset date. *See* Statement of Facts at 1.

. . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's factual findings shall be conclusive "if supported by substantial evidence." *Id*. An ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but [it] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017), *as corrected* (Apr. 25, 2017); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision "extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). A court "will disturb the ALJ's decision only if it falls outside the available zone of choice." *Kraus*, 988 F.3d at 1024 (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). "An ALJ's decision is 'not outside the

3

zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## B. Review of Report and Recommendation

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See*, *e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to timely object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review of that portion

4

of the report and recommendation. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1), intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Thomas,* 474 U.S. at 154.

## IV.  OBJECTIONS

In the Objections (docket no. 22), Barto argues that Judge Roberts erred: (1) in finding that the ALJ properly considered Dr. Perepu's opinions; (2) in finding that the ALJ gave good reasons to support his assessment of Barto's credibility; and (3) in finding that the ALJ properly relied upon vocational expert testimony. *See* Objections at 4. After conducting a de novo review of the objected-to portions of the Report and Recommendation (docket no. 21) and the Record ("R") (docket nos. 11-1 through 11-11), the court finds as follows.

### Objection 1:  Judge Roberts Erred in Finding the ALJ Properly Weighed Dr. Perepu's Opinions

#### a.  The Parties' Arguments

Barto argues that both the ALJ and Judge Roberts erred in failing to give the opinion of Dr. Perepu controlling weight. Objections at 4. Barto goes on to assert that because Dr. Perepu is a specialist and has treated Barto, her opinion should be accorded substantial weight pursuant to "the treating physician rule." *Id.* at 4-5.

Specifically, Barto argues that the Report and Recommendation errs in suggesting that the statements made by Dr. Perepu are "speculative." Barto additionally argues that the Report and Recommendation "discounts her opinion later by the ALJ." The court

5

understands the latter argument to assert that the Report and Recommendation erred in finding that the ALJ properly discounted Dr. Perepu's opinion.

### b. *Applicable Law*

The standard for evaluation of medical opinions for claims filed before March 27, 2017, is governed by 20 C.F.R. § 416.927, while 20 C.F.R. § 416.920c governs the standard for evaluation of medical opinions for claims filed on or after that date. Because Barto filed his claim after March 27, 2017, the current regulations at 20 C.F.R. § 416.920c apply.

Under the current regulations, an ALJ is no longer obligated to follow the "treating physician rule" or otherwise provide "good reasons" for failing to do so. *See* 20 C.F.R. § 416.920c. Also under the new rules, no medical opinion is automatically given controlling weight but instead is considered as to the persuasiveness of the opinion. *See* 20 C.F.R. § 416.920c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *See* 20 C.F.R. § 416.920c(c).

Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." 20 C.F.R. § 416.920c (b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5)." *Id.* An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. *See* 20 C.F.R. § 416.920c(c)(1-2).

Supportability concerns the internal consistency a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1).

Consistency concerns the external consistency the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 416.920c(c)(2).

### c. Application and Discussion

With regard to Barto's objection that the Report and Recommendation erred in holding that the ALJ properly "discounted" Dr. Perepu's opinion and found it speculative, Judge Roberts properly addressed those issues. Report and Recommendation at 15-18. Specifically, Judge Roberts stated:

> Claimant asserts that "[t]he [Commissioner] argues that [Dr. Perepu's] statements regarding employability are speculative and discounts [Dr. Perepu's] opinion later by the ALJ in favor of the social security doctors." (Doc. 19 at 1.) Claimant is mistaken. First, the Commissioner never mentions the social security doctors. (Doc. 18 at 6-9.) Second, and more importantly, the ALJ did not discount Dr. Perepu's in favor of the social security doctors. (AR at 18-19.) Instead, the ALJ noted that although the social security doctors are well qualified "these doctors neither had the benefit of physically examining the [C]laimant nor could they consider the additional evidence that was available only after they rendered their opinions . . . thus, the undersigned finds these prior administrative medical findings to be unpersuasive." (*Id*.) The ALJ then went on to explain the extent to which he did find Dr. Perepu's opinions persuasive. (*Id*. at 19.) Thus, I reject this part of Claimant's argument but still will address supportability and consistency.

*Id*. at 16-17.

Following his finding above, Judge Roberts proceeded to consider Dr. Perepu's opinion utilizing the appropriate regulation at 20 C.F.R. § 416.920c(c)(2). Judge Roberts went on to first address the factor of supportability, finding that Dr. Perepu's opinion was not supported by objective medical evidence in her own medical file and that Dr. Perepu's description of sickle cell disease as it was suffered in general did not address Barto's symptoms and signs specifically. Id. at 17. Judge Roberts reasoned that, "as the

7

ALJ observed, Dr. Perepu's opinion was only supported to the extent [Barto] had shown a pain crisis lasting a few hours that occurred approximately every other month...As the ALJ found, the record does not support that [Barto's] ability to work is "not consistent." Thus, the evidence on this issue supports finding Dr. Perepu's opinion unpersuasive." *Id.*

Judge Roberts then addressed the ALJ's findings as to the issue of consistency, reasoning that:

> Dr. Perepu's opinion is not consistent with [the] facts. As the ALJ's [sic] observed, the medical evidence shows that treatment with fluid was effective, and that [Barto] routinely declined analgesic medication which indicates his pain is not as severe as he alleges... Thus, the evidence on this issue supports finding Dr. Perepu's opinion unpersuasive.

*Id.* at 18.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Perepu. The ALJ justifiably found Dr. Perepu's opinion to be persuasive to the extent that it was supported by the objective record. Notably, the ALJ accepted Dr. Perepu's vague opinion that Barto would be unable to work during times when he had exacerbations and found that opinion persuasive as to the frequency and length of exacerbations documented in the record. Regardless, the ALJ did not find Dr. Perepu's opinion to be unpersuasive but rather to be partially persuasive, and the court finds that the ALJ gave good reason for doing so.

The ALJ found that Dr. Perepu failed to provide any explanation of her opinions and failed to provide any objective evidence on which it was based. The ALJ further reasoned that Dr. Perepu provided a statement regarding the symptoms generally suffered by individuals with sickle cell disease but did not provide any statement indicating the symptoms which Barto specifically suffered or how those symptoms were documented int the record. These facts specifically relate to the supportability of the opinion, as those facts address the internal support for the opinion pursuant to

8

20 C.F.R. § 416.920c(c)(1). Thus, the ALJ fulfilled his obligation to address the supportability of the opinion.

Additionally, the ALJ addressed the external inconsistency of Dr. Perepu's opinion with the medical evidence of record that Barto would have periods during which he could not function. That medical evidence indicated that Barto suffered an exacerbation of his condition six to eight times per year and that during those exacerbations he quickly recovered after treatment and suffered only moderate pain, as indicated by his refusal of pain medication. Ultimately, the ALJ did account for the fact that Barto would be expected to suffer from six to eight episodes of exacerbation per year during which he would be expected to be absent for one day. Thus, the ALJ also fulfilled his duty to address the consistency of the opinion pursuant to 20 C.F.R. § 416.920c (c)(2).

With regard to the fact that the ALJ stated that he found Dr. Perepu's opinions persuasive to the extent that they were supported by the record, the court acknowledges that the ALJ could have better articulated that he found the opinions to be partially persuasive. However, "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (second alteration in original) (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. Accordingly, the court shall overrule this objection.

### Objection 2: Judge Roberts Erred in Finding the ALJ Gave Good Reasons to Support his Assessment of Barto's Credibility

#### a. The Parties' Arguments

Barto summarily states that "the ALJ and Magistrate Judge erred in deciding that [Barto's] complaints were not credible." Objections at 4. Although Barto did not

9

specifically argue in support of that contention, he referenced his hearing testimony that he does not always go to the hospital when his condition is exacerbated. Objections at 6. From there, Barto reasons that the ALJ did not take into account that when Barto is not working he is better able to rest and maintain his health. *Id.* Additionally, Barto asserts that the ability to engage in activities such as light housework and visiting with friends does not provide adequate basis for a finding that Barto is capable of full-time work. *Id.*

The Commissioner argued in her brief (docket no. 18) that the ALJ adequately evaluated Barto's subjective complaints. Commissioner's brief at 9-12. Specifically, the Commissioner argued that the ALJ considered Barto's conservative care and denial of analgesic medication, considered the frequency and duration of treatment needed, and considered Barto's daily activities. *Id.* at 11-12.

### b. *Applicable Law*

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> [t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue,* 552 F.3d 728, 733 (8th Cir. 2009)).

The "credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009). Consequently, courts should defer to the ALJ's credibility finding when the ALJ explicitly discredits a claimant's testimony and gives good reason to do so. *Buckner v Astrue,* 646 F.3d 549, 558 (8th Cir. 2011). Although an ALJ need not explicitly discuss each *Polaski* factor in his or her decision, he or she must at least acknowledge and consider the factors. *See Renstrom*, 680 F.3d at 1067. ("The ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting a claimant's subjective complaints."). Thus, while the ALJ may not simply reject a claimant's testimony out of hand, the ALJ is not obliged to simply accept testimony as credible without consideration as to the consistency of that testimony with the record as a whole

An ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). If an ALJ discounts a claimant's subjective complaints, he or she is required to "make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (stating that an ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found'") (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits

the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### c. Application and Discussion

Judge Roberts determined that, "The ALJ articulated his reasons for discounting [Barto's] allegations at length considering the hearing testimony, [Barto's] medical records, and doctors' medical opinions." Report and Recommendation at 10. In reaching this determination, Judge Roberts considered that the ALJ thoroughly documented Barto's treatment history. *Id.* Judge Roberts noted specifically that: "Here, the ALJ reviewed the relevant medical evidence finding that "[Barto's] laboratory findings and clinical examinations remain relatively benign.... He noted that the claimant did not require '"aggressive medical treatment, frequent hospitalization, or surgical intervention.' He also considered the medical opinions before him." *Id*. at 12. Judge Roberts noted that the ALJ considered Barto's obesity, as well as Barto's lack of diligence in pursuing medical treatment for mental health issues. *Id.* Judge Roberts reasoned that the ALJ properly concluded the medical evidence was inconsistent with [Barto's] allegations. *Id*.

After reviewing the record, the court finds that the ALJ sufficiently articulated good reasons to find Barto's testimony not fully credible. The ALJ considered the effects of Barto's sickle cell anemia, reasoning that during the relevant period Barto received conservative care with periodic periods of acute exacerbation which required emergency department care for "a few hours" before being discharged. R at 16. The ALJ reasoned further that Barto's emergency care occurred 10 times between July of 2018 and February of 2020, with an exacerbation every other month and treatment requiring only a few hours of fluid management. *Id*. The ALJ also considered that during his emergency department treatment, Barto routinely declined analgesic medication. *Id*.

In general, the ALJ considered that other than the limited emergency department treatment, there was no medical evidence in the record which supported Barto's allegations regarding the severity of his symptoms. Notably, the ALJ considered that Barto declined pain medication during what would arguably be the periods of exacerbation in which he would have suffered the greatest level of pain. The court does not find fault with the ALJ's interpretation of the medical evidence.

The court finds that the ALJ did properly address the *Polaski* factors on the basis of the record before it. First, the ALJ considered Barto's daily activities, reasoning that Barto engaged in a wide range of activities which included reading, listening to music, computer programming, driving, and shopping. R at 14. The ALJ next addressed the duration, frequency, and intensity of the pain, noting in detail that on average Barto required treatment for several hours once every other month with fluid and that based upon Barto's refusal of pain medication, Barto's pain was not as severe as alleged. R at 6. The ALJ next addressed the dosage, effectiveness, and side effects of Barto's medication and specifically noted that after several hours of fluid management, Barto was routinely released from the emergency department without functional restrictions. *Id*.

When considering the severity of Barto's mental impairments, the ALJ specifically reasoned that Barto attended college and lived alone and that he "independently bathes, dresses, and manages his personal care." R at 14. The ALJ further considered Barto's activities of daily living, noting that "the record reflects that he reads, listens to music, "dabbles" in computer programming, and drives a vehicle." *Id*. The ALJ considered that Barto was able to shop, exhibited cooperative behavior on examination and was able to regulate his emotions when needed." *Id*. The ALJ stated that the objective and clinical evidence was inconsistent with Barto's claims of mental illness as it showed conservative care, lack of inpatient treatment, and mental status examinations which consistently showed full cognition, normal motor activity, intact memory and concentration, and

Case 5:21-cv-04016-LRR-MAR   Document 23   Filed 08/18/22   Page 13 of 22

unremarkable affect. R at 17. The ALJ noted that on occasion Barto's mental status examinations showed abnormal findings but that those findings were not pervasive. *Id.*

Having reviewed the entire record, the court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Barto's subjective allegations of disability were not credible. Because the ALJ seriously considered, but for good reasons explicitly discredited, Barto's subjective complaints, the court will not disturb the ALJ's credibility determination. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. Accordingly, the court will overrule this objection.

### Objection 3: Judge Roberts Erred in Finding that the ALJ Properly Relied Upon Vocational Expert Testimony

#### a. The Parties' Arguments

Barto's third and final argument is that the hypothetical question which the ALJ posed to the vocational expert was not supported by the evidence and that therefore the ALJ erred in relying upon the vocational expert's testimony. *See* Objections at 4; *see also* docket nos. 15, 19.

Barto offers no argument as to any error on the part of Judge Roberts but generally makes an argument that the ALJ erred in not adopting the opinion of Dr. Perepu and instead in formulating an RFC determination that Barto would be absent for six to eight days in a year. *See* Objections at 6. Additionally, threaded throughout the argument are the inferences that the ALJ failed to develop the record and that generally the record does not support a determination that Barto could perform sedentary work. *See generally* Objections.

14

### b. Applicable Law

The role of a vocational expert is "to take into account medical limitations, including opinions as to work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment." *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995). We have held a vocational expert's opinion is valid when based on listening to a claimant's earlier testimony. ('Because the [vocational expert] was present when [claimant] testified about her age, past work, and educational level, it was not necessary for the ALJ to specify those in his hypothetical.')." *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021).

Moreover, "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Pickney*, 96 F.3d at 294, 296 (citing *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996)).

The ALJ's residual functional capacity determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent review of the record. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). "It is the claimant's burden to prove his functional limitations, not the ALJ's burden to prove the claimant's functional capabilities." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall*, 274 F.3d at 1218).

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education, and work experience. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "An ALJ determines a claimant's RFC 'based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021) (alteration in original) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). Thus, an ALJ must use "'some medical evidence of the claimant's

ability to function in the workplace' in order to make a proper RFC assessment; "[t]he ALJ may not simply draw his [or her] own inferences about [the claimant's] functional ability from medical reports." *Id.* (first and third alterations in original) (quoting *Combs*, 878 F.3d at 646); *see also Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.").

Additionally, an ALJ "bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his [or her] case." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

"[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

### c. *Application and Discussion*

Judge Roberts addressed Barto's allegation that the hypothetical to the vocational expert was not complete. Judge Roberts reasoned:

> Claimant fails to identify what was incomplete about the hypothetical the ALJ posed. (*See* Doc. 15 at 7-8.) In the section of Claimant's brief that suggests the hypothetical is incomplete, Claimant asserts, without citing to anything in the record to support his assertion, that he will miss two days or more of work per month. (*Id.* at 7.) Referencing Dr. Perepu's letter, he merely states that unpredictable pain episodes prevent him from working. As already discussed, however, those pain episodes occur only every other month.
>
> As the Commissioner notes, the ALJ questioned the VE to determine what jobs would allow at least one absence a month. (Doc. 18 at 12.) But

neither the record nor the parties' stipulation supports absences as frequent
as once a month let alone twice a month. (Docs. 18 at 12; 14 at 5-6.)

Report and Recommendation at 19.

The court agrees that the hypothetical was supported by substantial evidence.
As noted by Judge Roberts, Barto fails to identify any manner in which the hypothetical
posed by the ALJ was incomplete. Even if the opinion of Dr. Perepu had been entitled
to great weight--which it was not--the ALJ's formulated RFC is not contrary to Dr.
Perepu's opinion that at times Barto will have exacerbations which require treatment and
at other times will be able to perform work. As noted by Judge Roberts, Dr. Perepu did
not give an opinion as to either how often Barto would have exacerbations or as to how
long those episodes would last. *Id*. at 19. The court agrees with Judge Roberts that Dr.
Perepu's opinion is not contrary to the ALJ's formulated RFC because the ALJ found
Dr. Perepu's opinion persuasive to the extent it was supported by the objective record,
and that the hypothetical is thus not incomplete. *Id*.

The court declines to reweigh the medical evidence, as Barto requests. As noted
above, the ALJ found that Dr. Perepu's opinion was persuasive to the extent that it was
supported by the objective medical evidence which indicated that showed Barto
experienced a pain crisis which occurred every other month. R at 19. After considering
Dr. Perepu's opinion utilizing the applicable regulations and considering the record as a
whole the ALJ formulated an RFC which was supported by the record as a whole. For
that reason, the court does not find that the ALJ's hypothetical, which was based upon
the ALJ's formulated RFC, was flawed or that the ALJ's reliance on vocational testimony
was flawed.

Judge Roberts addressed the vague argument raised by Barto that the ALJ erred
in general in finding that Barto could perform sedentary work. Report and
Recommendation at 14. The court, finds that the record supports the ALJ's determination
that Barto was capable of sedentary work. The court notes that both state agency

physicians, Dr. Larrison and Dr. Daly, opined that Barto would be capable of performing a reduced range of light work. R at 57-58, 69-70. Additionally, Dr. Perepu stated that when Barto was not experiencing an exacerbation he would be able to perform such sedentary tasks as reading and speaking on the phone. R at 758. Specifically, Dr. Perepu opined that at times when he was not experiencing a pain crisis Barto would be capable of engaging in employment. *Id*. Sedentary work is that which requires the lowest level of physical exertion. Sedentary work is defined by SSA as follows:

> Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

*Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996).

Barto fails to articulate which of the limited physical activities involved in sedentary work he would be unable to perform. Similarly, Barto offers no explanation as to why he would be precluded from completing simple tasks or manipulating light objects. Barto's own testimony is that he "dabbled" in computer programming. R at 14. Barto's own testimony supports that on days that he is not experiencing an exacerbation of his condition, he is capable of performing sedentary work.

In his brief, Barto relied heavily on *Ross v. Apfel*, 218 F.3d 844, 847 (8th Cir. 2000). In *Ross*, the court found that it was error to have ignored objective findings which supported the plaintiff's complaints of pain as a result of sickle cell anemia. *Id*. at 844. But *Ross* is easily distinguishable from the case at bar. The plaintiff in *Ross* consistently complained of pain and fatigue (*Id*. at 847), which is a stark contrast to Barto's records which indicate that even at times when he suffered flare-ups Barto denied pain and refused

18

analgesic medication when it was offered to him.  R at 14.  In August of 2019, for instance, when experiencing a pain crisis, Barto indicated that his pain level was moderate with a level at five of ten and that his pain was tolerable and without need of medication. R at 292. The court does not find that the ALJ committed error when he reasoned that it was inconsistent for Barto to claim that he was in debilitating pain during flare-ups when at the time he experienced those episodes he denied severe pain to his health care providers and refused pain medication.

The ALJ's determination that Barto can engage in a range of sedentary work with additional non-exertional limitations is supported by the records regarding Barto's mental health as well.  As noted previously, the ALJ considered the fact that Barto received conservative care which largely included quarterly medication management.  R at 17. The ALJ noted that Barto never required inpatient care or emergency intervention for his mental health conditions.  *Id*.  Moreover, the ALJ noted that Barto routinely denied depression or other symptoms and routinely demonstrated well-groomed appearance, full and appropriate affect, intact concentration and memory and cooperative behavior on mental status examination. *Id*. Barto offers no evidence that he suffered mental impairments which would cause greater restriction than those accounted for in the ALJ's formulated RFC.

It was the opinion of consultative examiner, Dr. Needleman, that Barto's ability to complete daily activities is limited at times due to low motivation unless he finds it important, that he might struggle to relate to others when at work because of irritability and that he might struggle to comply with simple instructions due to distractibility.  R at 531.  The ALJ found Dr. Needleman's opinion partially persuasive, and specifically reasoned that on examination Barto showed no irritability or social withdrawal, that mental status findings were routinely benign, and that Barto interacted with the public with no evidence of incident.  R at 19.  The ALJ stated that in an abundance of caution he implemented social restrictions and limited Barto to simple tasks.  R at 19.   In his formulated RFC, the ALJ provided that Barto was not to work with the public and should

19

be allowed to work independently of others. R at 15. Additionally, the ALJ provided that Barto should be limited to repetitive and simple tasks. *Id*.

Notably, Barto did not object to the ALJ's consideration of Dr. Needleman's opinion. The court finds that the ALJ's consideration of Dr. Needleman's opinion was supported by the record and that the ALJ provided good reason for finding the opinion only partially persuasive. Moreover, the court finds that the ALJ accounted for Dr. Needleman's opinion regarding social restrictions in the formulated RFC when he provided for no contact with the public and the ability to limit contact with co-workers and accounted for any restriction with concentration by limiting Barto to simple, repetitive tasks. R at 14. Thus, the court finds that the hypothetical posed to the vocational expert was not flawed with regard to either exertional or non-exertional limitations.

Barto's brief also references the vocational expert's testimony that an individual of Barto's age, education and work experience would be able to be off task no more than ten percent of the day and would not be able to be employed if he or she required their feet to be elevated and implies that the ALJ erred in not considering those limitations. Objections at 6. Assuming that Barto was arguing that the hypothetical was deficient because it did not include these limitations, the court finds that Barto's argument fails. First, it was on cross-examination that Barto's attorney asked the vocational expert the amount of time that an individual could be off tasks and whether the jobs cited by the vocational expert would allow for an individual to sit with their feet at a ninety-degree angle. R at 47. The ALJ did not make a determination that Barto needed to elevate his feet or that Barto would be off task more than ten percent of the day. R at 14. Specifically, the ALJ found that those portions of Barto's testimony which were inconsistent with the record were not found to be fully credible. R at 14-19. Because the court has found above that the ALJ sufficiently articulated good reason to find Barto's allegations not fully credible, the court will limit its present review to the ALJ's consideration of Barto's testimony that he needs to raise his legs.

20

While it was Barto's testimony that he needed to elevate his feet through the day, there is no support for that allegation in the medical record, nor is there any evidence which supports a finding that Barto would be off task ten percent or more. The ALJ is not required to include all alleged limitations in his RFC, only those which are medically established. Here, no medical professional made any statement regarding Barto elevating his legs. Also, having reviewed the record, the court cannot find any instance in which Barto reported to any medical provider that he had to raise his legs. Dr. Perepu did not make any statement in her opinion that Barto would need to raise his legs. *Id.* at 758, 760. Moreover, the allegation is not only unsupported by the record but in contradiction to it. Even when Barto experienced pain crisis and was seen in the emergency department, it was noted that he had no swelling in his legs. *Id.* at 92. Therefore, based on the record as a whole the court finds Barto's allegation to be unsupported and does not find the ALJ at fault for failing to incorporate it into his formulated RFC.

Lastly, the court will address Barto's assertion that the ALJ failed to develop the record to determine both the frequency and length of Barto's exacerbations, given Dr. Perepu's failure to make a definitive statement as to each. After reviewing the record, the court finds that this argument also fails.

It is prejudicial for an ALJ to fail to develop the record only in an instance where the ALJ cannot make a determination based upon the evidence available in the record. In the case at bar, the record was well-developed and provided ample evidence upon which the ALJ could rely. Specifically, the ALJ was able to make a determination as to both the frequency with which Barto would experience exacerbations and the length of time for which he would experience them because detailed emergency room records provided a basis on which to do so. The emergency room records are detailed and consistent and provided a clear picture as to Barto's function during exacerbations and the treatment needed to stabilize his condition. The ALJ reasoned specifically that Barto sought emergency intervention for exacerbations of his condition exactly ten times between July 2018 and February 2020. R at 14. The ALJ noted the dates and times that

Barto suffered exacerbation as well as the maximum length of treatment required to stabilize Barto's condition. *Id.* Specifically, the ALJ found that he was able to make a determination based upon the emergency department records and that no further development was necessary.

The court finds that the ALJ's formulated RFC was supported by substantial evidence and that the hypothetical posed to the vocational expert was thus also supported by substantial evidence. Accordingly, the court overrules this objection.

### V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1)     The Objections (docket no. 22) are **OVERRULED**; and

(2)     The Report and Recommendation (docket no. 21) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3)     The Complaint (docket no. 4) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**DATED** this 18th day of August, 2022.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA